UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JOHNNY LEE ASBELL,

                     Petitioner,

v.                                Case No. 3:06-cv-994-J-33HTS

WALTER A. MCNEIL,
et al.,

                     Respondents.

_____

**ORDER**

**I. Status**

Petitioner Johnny Lee Asbell, an inmate of the Florida penal system who is proceeding *pro se* and *in forma pauperis*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) and Memorandum of Law in Support of the Petition for Writ of Habeas Corpus (Doc. #10) (hereinafter Memorandum of Law) pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2003 state court (Clay County, Florida) judgment of conviction for sale of cocaine on the following grounds: (1) the trial court committed reversible error when it allowed Sergeant Jenner to identify Petitioner as the person who sold narcotics to Detective Harris where Jenner's identification was based, not on

personal observations, but on his viewing of a video tape of the event, when the entire defense was based on the theory of misidentification; (2) ineffective assistance of trial counsel for failure to fully investigate the case through discovery and/or depositions of various officials, thus hampering Petitioner's ability to establish the defense of misidentification; and (3) counsel was ineffective for failure to request a required jury instruction on an essential element of the crime pursuant to Chicone v. State, 684 So.2d 736 (Fla. 1996), and the trial court committed fundamental error for failure to give the Chicone jury instruction.

Respondents have responded to the Petition. See Respondents' Answer in Response to Order to Show Cause (Doc. #19) (hereinafter Response). In support of their contentions, they have submitted exhibits.[1] Petitioner was given admonitions and a time frame to respond. See Court's Order to Show Cause and Notice to Petitioner (Doc. #12). Petitioner has responded. See Petitioner's Reply to Answer in Response to Order to Show Cause (Doc. #25) (hereinafter Petitioner's Reply). This case is now ripe for review.

## II. Procedural History

On or about July 24, 2002, Petitioner Asbell was charged with sale or delivery of cocaine within 1000 feet of a school. Ex. A,

---

[1] The Court will hereinafter refer to Respondents' exhibits as "Ex."

Information.  A jury trial was conducted on May 5, 2003.  Ex. B, Transcript of the Jury Trial Proceedings (hereinafter Tr.).  The jury found him guilty of sale of cocaine, a lesser offense.  Tr. at 147; Ex. C, Verdict.  A motion for new trial (Ex. D), filed by counsel, was denied.  Ex. E; Ex. F at 175-80.  On May 22, 2003, the court sentenced Petitioner as a habitual felony offender to fifteen years of incarceration.  Ex. F at 186; Ex. G, Judgment.

On appeal, Petitioner, through counsel, raised the following claims: (1) the trial court abused its discretion by admitting into evidence inadmissible hearsay regarding the identification of Appellant as the individual who sold crack cocaine to an undercover detective, and (2) the trial court committed reversible error in restricting Appellant's cross-examination of Detective Randy Harris on the issue of whether a substantial number of crack cocaine buys he investigated in 2002 involved suspects that were black males. Ex. H.  The State filed an Answer Brief.  Ex. I.  On April 1, 2004, the appellate court per curiam affirmed without issuing a written opinion.  Asbell v. State, 871 So.2d 205 (Fla. 1st DCA 2004); Ex. J.  The mandate issued on April 19, 2004.  Ex. K.

On or about June 30, 2004, Petitioner filed a *pro se* petition for writ of habeas corpus, claiming ineffective assistance of appellate counsel for failure to raise the following issue on appeal: the trial court committed fundamental error in not giving a jury instruction pursuant to Chicone, thus depriving Petitioner

3

of a fair trial and just review on appeal.  Ex. L.  On August 11, 2004, the appellate court per curiam denied the petition on the merits.  Asbell v. State, 881 So.2d 1163 (Fla. 1st DCA 2004); Ex. M.  Petitioner's August 19, 2004, motion for rehearing was denied on September 21, 2004.  Ex. N; Ex. O.

On or about December 9, 2004, Petitioner, pursuant to Fla. R. Crim. P. 3.850, filed a *pro se* motion for post conviction relief and an amended motion on July 9, 2005, raising the following claims: (1)(a) ineffective assistance of counsel (Ted W. Hellmuth) for advising Petitioner to waive his Sixth Amendment right to a speedy trial while representing Petitioner when the Public Defender's Office was also representing Ray Flanders, a confidential informant who later testified against Petitioner at trial, (b) ineffective assistance of counsel for failure to test the legality of the State's Information, which allegedly was not signed and failed to properly and clearly recite that the prosecution was being brought by the State Attorney, (c) ineffective assistance of counsel for failure to obtain documentation from the task force, (d) ineffective assistance of counsel for failure to obtain the case notes of Detective Hawkins, (e) ineffective assistance of counsel for failure to depose Detective Hawkins and Detective Michon, (f) ineffective assistance of counsel for failure to suppress the videotape of the drug buy, (g) ineffective assistance of counsel for failure to suppress the

4

description of the Petitioner, and (h) ineffective assistance of counsel for failure to investigate the location where the alleged drug buy took place; (2) the trial court committed fundamental error by adjudicating him guilty upon the Information, which was legally insufficient since it was not properly signed or sworn to by the prosecuting officer who brought the charge against Petitioner; (3)(a) ineffective assistance of trial counsel for failure to advise the jury, in opening statement, on which theory the defense would present to prove Petitioner was not guilty of the charged offense, and (b) ineffective assistance of counsel for failure to request a <u>Chicone</u> jury instruction and for failure to preserve the issue for appellate review; and (4) the trial court committed fundamental error for failure to give the statutory required <u>Chicone</u> jury instruction. Ex. P.  On November 22, 2005, the court denied the motions for post conviction relief.  Ex. Q. No evidentiary hearing was conducted.  Petitioner appealed and filed an Initial Brief of Appellant.  Ex. R.  The State filed a notice to the court that no answer brief would be filed.  Ex. S. On May 3, 2006, the appellate court per curiam affirmed without issuing a written opinion.  <u>Asbell v. State</u>, 928 So.2d 1223 (Fla. 1st DCA 2006); Ex. T.   The mandate was issued on May 31, 2006. Ex. U.

On or about June 21, 2006, Petitioner filed a pro se petition to invoke all writs jurisdiction in the Florida Supreme Court.  Ex.

V.  On July 5, 2006, the court dismissed the petition for lack of jurisdiction.  Ex. W.

The Petition (signed November 1, 2006, and filed November 13, 2006) is timely filed within the one-year period of limitation.  See 28 U.S.C. § 2244(d); Response at 5-6.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  Id.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.  The pertinent facts of the case are fully developed in the record before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999).  Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development."  Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, an evidentiary hearing will not be conducted by this Court.

## IV.   Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.  Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).   Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was:  "(1) . . . contrary to, or involved an unreasonable[2] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State

---

[2] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."  Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

court proceeding." 28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006).

Stewart, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." Schriro, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th

8

Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit recently captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687, 104 S.Ct. at 2064.  Second, the defendant must show that counsel's deficient performance prejudiced him.  <u>Id</u>.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007).  "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit stated:

> The Supreme Court has established certain principles and presumptions to guide our review of ineffectiveness claims under the flexible, case-specific standards of Strickland.  We engage only in a "highly deferential" review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation omitted).  As a result of this presumption, a petitioner must show "that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  Thus, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." Id. at 1314 n. 15 (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999)).  Moreover, because the standard is an objective one, trial counsel's admission that his performance was deficient "matters little." Id. at 1315 n.16.  We must also avoid "the distorting effects of hindsight" and evaluate the reasonableness of counsel's performance

10

> from the perspective of counsel at the time
> the acts or omissions were made.  <u>Strickland</u>,
> 466 U.S. at 689, 104 S.Ct. at 2065.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that the trial court committed reversible error when it allowed Sergeant Jenner to identify Petitioner as the person who sold narcotics to Detective Harris where Jenner's identification was based, not on personal observations, but on his viewing of a video tape of the event, when the entire defense was based on the theory of misidentification. Respondents contend that Petitioner failed to raise this issue on direct appeal.  Response at 14-17.  However, Petitioner asserts that the claim was raised on direct appeal (Petitioner's Reply at 3), and this Court agrees that Petitioner sufficiently raised the claim on direct appeal in Issue I.  Ex. H at 16; Tr. at 70.

Petitioner raised this claim on direct appeal solely as a violation of state law.  Petitioner did not present the issue on direct appeal in terms of federal constitutional violations; however, he presents the same claim here that he raised on direct appeal.  Thus, this Court is satisfied that the claim is exhausted, but it presents an issue of state law that is not cognizable on federal habeas review.

The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.  See Coleman v. Thompson, 501 U.S. 722, reh'q denied, 501 U.S. 1277 (1991).  "Federal habeas relief is unavailable 'for errors of state law.'"  Jamerson v. Secretary for Dept. of Corrections, 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).

The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate.  McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992).  As succinctly stated by the Eleventh Circuit:

> A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. Bronstein v. Wainwright, 646 F.2d 1048, 1050 (5th Cir. Unit B June 1981).  State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases. Mendiola v. Estelle, 635 F.2d 487, 489 (5th Cir. Unit A 1981).

McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992), cert. denied, 507 U.S. 975, reh'q denied, 507 U.S. 1046 (1993).

In sum, Petitioner's claim under ground one (that the trial court erred under Florida law) presents an issue of state law that

is not cognizable on federal habeas review.  Thus, he is not entitled to relief on the basis of this claim under ground one.

## B. Ground Two

As ground two, Petitioner claims defense counsel was ineffective for failure to fully investigate the case through discovery and/or depositions of various officials, thus hampering Petitioner's ability to establish the defense of misidentification. As acknowledged by the parties, Petitioner raised these claims in his Rule 3.850 motion.  In denying these claims on the merits, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

> The Defendant's third and fourth subclaims can be addressed together because they allege that defense counsel was ineffective for failing to obtain Sergeant Jenner's and Detective Hawkins' case notes. (Defendant's Motion at 7.) As previously mentioned, in order to prevail on a claim for relief, the Defendant must demonstrate both ineffectiveness and prejudice. Strickland, 466 U.S. at 687; Stephens v. State, 748 So.2d 1028, 1033 (Fla. 1999). Additionally, the Defendant must plead with specificity the acts which he avers constitute ineffectiveness. See Parker v. State, 603 So.2d 616, 617 (Fla. 1st DCA 1992). In Parker v. State, the First District Court of Appeal affirmed the denial of a Rule 3.850 motion and held that conclusory allegations of ineffective assistance of counsel are facially insufficient to demonstrate entitlement to relief:
>
> > Appellant's allegations of ineffective assistance of counsel are stated as mere conclusions,

> unsupported by allegations of
> specific facts which, when
> considered in the totality of the
> circumstances, are not conclusively
> refuted by the record and [do not]
> demonstrate a deficiency of counsel
> that was detrimental to the
> defendant. As such, the allegations
> are facially insufficient to
> demonstrate entitlement to relief.

Id. at 616 (citations omitted). Here, the
Defendant contends that the testimony of the
officers was inconsistent with the testimony
of confidential informant, Ray Flanders, and
that these alleged inconsistencies should have
alerted counsel to obtain the officers' case
notes. With these case notes, the Defendant
claims defense counsel would have been able to
more fully cross examine the State's
witnesses. But the Defendant offers no
explanation as to how the officers' testimony
was inconsistent with Mr. Flanders' testimony.
Additionally, the Defendant does not state
whether the officers' case notes even existed
or whether they contained any additional
information not already provided in the arrest
report. Consequently, the Defendant has failed
to show that the officers' case notes existed,
or if they did, how the case notes would have
changed the outcome of his case as required by
Strickland. The Defendant's third and fourth
subclaims are denied.

In the Defendant's fifth subclaim, he
avers that defense counsel was ineffective for
failing to depose Detective Hawkins and
Detective Michon. Had they been deposed, the
Defendant believes that this would have given
defense counsel an opportunity to establish
(1) which officer searched the vehicle used in
the drug buy; (2) the range of the audio
equipment that was used during the
surveillance of the drug buy; (3) the date and
time of the drug buy and which officers were
present; and (4) which picture Sergeant Jenner
showed to Detective Harris who bought the

14

> crack from the Defendant and later identified
> him. (Defendant's Motion at 10-11.) Initially,
> this Court notes that the Defendant's claims
> are facially insufficient under <u>Nelson v.
> State</u>, 875 So.2d 579, 583-84 (Fla. 2004). In
> accordance with <u>Nelson</u>, this Court granted the
> Defendant limited leave to amend his fifth
> subclaim that defense counsel was ineffective
> for failing to depose Detectives Hawkins and
> Michon. <u>Id</u>., <u>Spooner v. State</u>, 889 So.2d 900,
> 901 (Fla. 1st DCA 2004). (Exhibit "M.") In
> response, the Defendant filed an Amended
> Motion on July 9, 2005, however, the Defendant
> still has failed to comply with the
> requirements of <u>Nelson</u>. Consequently, the
> Defendant's fifth subclaim is denied.

Ex. Q at 102-04.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claims were rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

Petitioner Asbell was charged with sale or delivery of cocaine within 1000 feet of a school. The theory of the prosecution was that Petitioner Asbell sold cocaine to Detective Randall Harris who was conducting undercover drug buys. The State called five witnesses: Randall Harris, Ray Flanders, John Jenner, Glenn Abate and Linda Turner. Defense counsel (Mr. Steven Brian Whittington), in his opening statement to the jury, stated:

> You'll see the three main witnesses in this case, Jenner, Harris, and Flanders, who I think you're going to see have some inconsistencies in their stories.
>
> The other two, the school person [(Linda Turner)] and the lab analyst [(Glenn Abate)],

16

> have nothing to do with the transaction or any
> transaction.   None  of  them  are  going  to  say
> they were there or saw anything.
>
>           .  .  .  .
>
>           At the end of the day the judge is going
> to give you some instructions on how to weigh
> evidence, how to consider what you've heard,
> and  some  of  those  instructions  are  going  to
> include     whether     or     not     there     were
> inconsistencies and what are the differences
> in stories.   And I think when you get through
> with listening to all of that, you're going to
> come  to  the  conclusion  that  the  State  hasn't
> proved  their  case  beyond  a  reasonable  doubt
> and  at  the  end  we're  going  to  ask  you  to
> return a verdict of not guilty.

Tr. at 14, 15.

Thus, as noted by defense counsel, the three primary witnesses

were Detective Harris, Sergeant Jenner and Ray Flanders.   Detective

Harris of the Clay County Sheriff's Office testified that he was

conducting undercover drug buys with a confidential informant (Ray

Flanders) on April 24, 2002.   Id. at 25.   Detective Harris and

Flanders drove together to a predetermined location in Green Cove

Springs, Florida.   Id. at 25-29, 31.   Flanders was driving the

vehicle which was equipped with audio and video recording devices.

Id. at 29-30.   Detective Harris explained that an individual

approached the vehicle and asked Detective Harris, who was on the

passenger side of the car, what he wanted.   Id. at 32, 52.

Detective Harris responded that he wanted a twenty or a forty,

which is narcotics language meaning $20.00 for a rock or $40.00 for

a rock of crack cocaine.   Id.   Detective Harris exchanged money for

17

the crack cocaine and returned to the location where the case agent (Sergeant Jenner) was located.  Id. at 33.  The drug transaction occurred on the passenger side of the vehicle, and Detective Harris accepted the drugs.  Id. at 52.  He explained the next step after the transaction.

> We notified the other teams that a deal was made and we go back to the predetermined location where at that point the case agent, which is assigned to the case, removes the audio, the videotape, the drugs obviously from who purchased them to keep a chain of custody. And we wait a few minutes and then we try to go back in there again, that way we're not trying to buy from the same person every time.

Id. at 33.

The State then called Ray Flanders, the confidential informant.  Id. at 53.  Flanders testified that he was working as a confidential source with the Green Cove Springs Police Department on April 24, 2002.  Id.  He had contacted Detective Harris to provide help in return for assistance with his pending criminal charge.  Id. at 54.  Flanders explained that he drove that night, but did not handle any drugs that evening.  Id. at 55.

Sergeant Jenner of the Green Cove Springs Police Department testified that, on April 24, 2002, he was assigned to the Clay County drug task force.  Id. at 58-59.  He was the case agent assigned to work Green Cove Springs that day.  Id. at 59.  The case agent writes the reports, handles the evidence, interviews any witnesses that may arise from the case and prepares arrest

18

warrants.  <u>Id</u>. at 59-60.  He explained that Detective Harris, Detective Hawkins and Special Agent Tyre from the Drug Enforcement Administration were also working that night.  <u>Id</u>. at 60.  He noted that Detective Michon set up the audio and video equipment in the vehicle.  <u>Id</u>.  Sergeant Jenner monitored the audio transmission while the transaction occurred.  <u>Id</u>. at 61.  Sergeant Jenner stated that the confidential informant and the car were searched that night.  <u>Id</u>.  Sergeant Jenner viewed the videotape of the transaction that night and recognized the individual who sold him the drugs to be Petitioner Johnny Asbell.  <u>Id</u>. at 70.  After the drug transaction was completed, Sergeant Jenner met with Detective Harris at a predetermined location and the drugs were turned over to him.  <u>Id</u>. at 71.  The audio and the videotape of the transaction were played for the jury during the testimony of Sergeant Jenner. <u>Id</u>. at 66-70.

The defense did not present any evidence or testimony.  The theory of the defense, presented in opening statement and developed through cross-examination of the State's witnesses, was that the State's witnesses' testimonies contained many inconsistencies, the witnesses had misidentified Petitioner as the individual who sold the crack cocaine and the State did not prove its case beyond a reasonable doubt.  Defense counsel cross-examined Detective Harris and Sergeant Jenner extensively with regard to their memories of the transaction, the confidential informant, who searched the

confidential informant and the vehicle prior to the transaction and why confidential informants are used in general for undercover drug buys. Id. at 33-49, 73-84. Defense counsel was able to elicit numerous inconsistencies between the officers' deposition testimony and their trial testimony. Id. Further, defense counsel cross-examined Sergeant Jenner with respect to his measuring the distance from the school property to where the drug buy occurred, which measured two hundred and seventy-four feet. Id. at 88-89. The jury returned a verdict on the lesser offense of sale of cocaine. Id. at 147.

It is evident from the trial transcript that defense counsel's strategy was to attack the credibility and reliability of the State's witnesses, with respect to all aspects of the transaction. Defense counsel elicited various inconsistencies between their versions of the event and with prior deposition testimony. In closing argument, defense counsel urged the jury at length to discount the witnesses' identification of Petitioner in light of their differing versions of the incident and their inconsistent statements. Id. at 120-24, 130-36. The prosecution commented that defense counsel had done his job by pointing out that there were some inconsistencies in the officers' testimonies, but concluded that the videotape was "the damning evidence" to convict Petitioner. Id. at 124, 125, 126, 130. Here, counsel's performance was not deficient.

20

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Thus, the ineffectiveness claim is without merit.

## C. Ground Three

As ground three, Petitioner Asbell claims that counsel was ineffective for failure to request a required jury instruction on an essential element of the crime pursuant to <u>Chicone v. State</u>, 684 So.2d 736 (Fla. 1996), and that the trial court committed fundamental error for failure to give the <u>Chicone</u> jury instruction. Specifically, Petitioner asserts that, at the time he committed the charged offense (April 24, 2002), knowledge of the illicit nature of the substance possessed and sold was an essential element of the crime and that he was entitled to have the jury instructed with regard to this element.  As acknowledged by the parties, Petitioner raised these claims in his Rule 3.850 motion.  In denying the ineffectiveness claim on the merits, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> In his second subclaim, the Defendant alleges that defense counsel was ineffective for failing to request that this Court give <u>Chicone</u> instructions. (Defendant's Motion at 21.) This Court finds that while the Defendant

may have been entitled to a <u>Chicone</u> instruction on the Defendant's knowledge of the illicit nature of the substance sold pursuant to <u>Jenkins v. State</u>, 694 So.2d 78 (Fla. 1st DCA 1997), the State would have been entitled to an additional jury instruction that there was a presumption that the Defendant knew the illicit nature of the substance sold based upon the Defendant's act of selling the substance pursuant to <u>State v. Medlin</u>, 273 So.2d 394 (Fla. 1973), and based upon the testimony presented at trial.

At trial, the State presented the testimony of undercover police officer Detective Harris, who testified that the Defendant approached the officer's vehicle and asked how much he wanted. (Exhibit "N," page 32.) Detective Harris requested a "20 or a 40," and the Defendant gave Detective Harris $40 worth of crack cocaine. (Exhibit "N," pages 31-33.) After the exchange, Detective Harris notified backup units who then stopped and arrested the Defendant, and removed the audiotape, videotape, and the drugs from Detective Harris' car to maintain the chain of custody. (Exhibit "N," pages 32-33.) Additionally, both Detective Harris and Sgt. Jenner identified the Defendant as the suspect who approached Detective Harris' car on the 1600 block of Mill Street and sold him cocaine. (Exhibit "N," pages 25, 30, 70.) Finally, the State presented the jury with the videotape and the audiotape of the sale between Detective Harris and the Defendant. (Exhibit "N," pages 66-70.) Accordingly, this Court finds that the Defendant has failed to establish that he was prejudiced as a result of the alleged errors of counsel. Therefore, there is no reasonable probability that had counsel requested an additional jury instruction pursuant to <u>Chicone</u>, the outcome of the proceedings would have been different. <u>Strickland</u>, 466 U.S. 668. The Defendant's second subclaim is denied.

Ex. Q at 107-08.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.  Accordingly, the ineffectiveness claim was rejected on the merits by the state trial and appellate courts.  Thus, there are qualifying state court decisions.  This ineffectiveness ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Secondly, Petitioner claims that the trial court committed fundamental error for failure to give the <u>Chicone</u> jury instruction.  Petitioner raised this claim in his Rule 3.850 motion, and the court stated:

> The Defendant's fourth ground is that this Court "violated the constitutional rights under 'due process' of the movant, when, [this] Court failed [to give] the mandatory required <u>Chicone</u> jury instruction." (Defendant's Motion at 24.) This claim is not cognizable under a motion filed pursuant to Florida Rule of Criminal Procedure 3.850. Fla. Crim. R. Pro. 3.850(c). Further, the Defendant's argument could have or should have been raised on direct appeal, and is thus procedurally barred. <u>Harvey v. Dugger</u>, 656

23

> So.2d 1253 (Fla. 1995); <u>Cherry v. State</u>, 659
> So.2d 1069 (Fla. 1995). Consequently, the
> Defendant's fourth ground is denied.

Ex. Q at 108.  Upon appeal, the appellate court per curiam affirmed without issuing a written opinion.

Respondents point out that this trial court error claim was not raised on direct appeal, but rather was raised for the first time in Petitioner's Rule 3.850 motion.   Response at 30. Procedural default may result from non-compliance with state procedural requirements.   <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30, <u>reh'g</u> <u>denied</u>, 501 U.S. 1277 (1991).

> Federal courts are barred from reaching
> the merits of a state prisoner's federal
> habeas claim where the petitioner has failed
> to comply with an independent and adequate
> state procedural rule.  <u>Wainwright v. Sykes</u>,
> 433 U.S. 72, 85-86, 97 S.Ct. 2497, 53 L.Ed.2d
> 594 (1977).  When a state court correctly
> applies a procedural default principle of
> state law, federal courts must abide by the
> state court decision, <u>Harmon v. Barton</u>, 894
> F.2d 1268, 1270 (11th Cir. 1990), but only if
> the state procedural rule is regularly
> followed, <u>Ford v. Georgia</u>, 498 U.S. 411, 424,
> 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). . . .

<u>Siebert v. Allen</u>, 455 F.3d 1269, 1271 (11th Cir. 2006), <u>cert</u>. <u>denied</u>, 127 S.Ct. 1823 (2007); <u>see also</u> <u>Baldwin v. Johnson</u>, 152 F.3d 1304, 1317 (11th Cir. 1998) (finding that federal courts may not review a claim that a petitioner procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar,

and the bar presents an independent and adequate state ground for denying relief), cert. denied, 526 U.S. 1047 (1999).

The procedural bar imposed in Petitioner's case is firmly established and regularly followed in the Florida courts. See Teffeteller v. State, 734 So.2d 1009, 1016 (Fla. 1999) (holding that substantive claims raised by post-conviction relief movant were procedurally barred because they could have been raised on direct appeal); Smith v. State, 445 So.2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004).  "[A] petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar." Hill v. Jones, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), cert. denied, 519 U.S. 1119 (1997).

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per

curiam) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1986)), <u>cert</u>. <u>denied</u>, 538 U.S. 947 (2003).  The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence."  <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).

Petitioner has not shown cause and prejudice, nor has he demonstrated that he meets the requirements for the fundamental miscarriage of justice exception.  Thus, this portion of ground three is procedurally barred and need not be addressed by this Court.[3]

However, even assuming *arguendo* that this claim is not procedurally barred, as noted by Respondents (Response at 33-35), this trial court error claim presents issues of purely state law that are not cognizable on federal habeas review.  The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United

_____

[3] Petitioner, in his *pro se* petition for writ of habeas corpus, claimed ineffective assistance of appellate counsel for failure to raise the following issue on direct appeal: the trial court committed fundamental error in not giving a jury instruction pursuant to <u>Chicone</u>, thus depriving Petitioner of a fair trial and just review on appeal.  Ex. L.  The appellate court per curiam denied the petition on the merits.  <u>Asbell v. State</u>, 881 So.2d 1163 (Fla. 1st DCA 2004); Ex. M.  Thereafter, Petitioner's motion for rehearing was denied.  Ex. N; Ex. O.

States.[4] <u>Coleman v. Thompson</u>, 501 U.S. 722, <u>reh'g</u> <u>denied</u>, 501 U.S. 1277 (1991).

And, even assuming that Petitioner properly exhausted this claim in state court and has raised a claim of federal constitutional dimension in this Court, the claim is without merit. During the time period in question, the state of the law in Florida was as follows.  In 1996, in <u>Chicone</u>, 684 So.2d 736, the Florida Supreme Court held that the offense of possession of a controlled substance included not only knowledge that the substance was in the defendant's possession, but also knowledge of the illicit nature of the substance.  Thus, the court stated:

> While the existing jury instructions are adequate in requiring "knowledge of the presence of the substance," we agree that, if specifically requested by a defendant, the trial court should expressly indicate to jurors that guilty knowledge means the defendant must have knowledge of the illicit nature of the substance allegedly possessed. We hold that the defendant was entitled to a more specific instruction as requested here.

<u>Id</u>. at 745-46 (footnote omitted).  Further, in <u>Jenkins v. State</u>, 694 So.2d 78, 80 (Fla. 1st DCA 1997), the First District Court of Appeal found that, upon request, a defendant was entitled to a "knowledge" instruction for an offense of sale of cocaine within

---

[4] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §2254(a).

1,000 feet of a school.  In Jenkins, the defendant testified that he intended to sell a counterfeit mixture, and he thought he had sold a counterfeit mixture of candle wax, baking soda and an over-the-counter tooth ache remedy.  Id. at 79.  He requested that the trial court instruct the jury that he could not be found guilty of the offense unless it found that he knew the substance he sold was cocaine.  The trial court denied his request, and the appellate court reversed finding he was entitled to the instruction.

Subsequently, in Scott v. State, 808 So.2d 166 (Fla. 2002), the Florida Supreme Court further explained its holding in Chicone, stating:

> We therefore reiterate our holding in Chicone that knowledge of the illicit nature of the contraband is an element of the crime of possession of a controlled substance, a defendant is entitled to an instruction on that element, and it is error to fail to instruct on that element.  It is error to fail to give an instruction even if the defendant did not explicitly say he did not have knowledge of the illicit nature of the substance.  Additionally, the Medlin presumption or inference is applicable to those cases where the defendant has actual, personal possession of the substance.[5] The Fifth District's view that any error was harmless because the jury found Scott to be in

---

[5] As noted by the post conviction court in denying the Rule 3.850 motion as to the ineffectiveness claim, the State would have been entitled to an additional jury instruction that there was a presumption that the Defendant knew the illicit nature of the substance sold based upon the Defendant's act of selling the substance pursuant to State v. Medlin, 273 So.2d 394 (Fla. 1973), and based upon the testimony presented at the trial.  Ex. Q at 107.

> exclusive control and thus properly inferred
> knowledge begs the question. How could the
> jury infer guilty knowledge without being
> properly instructed on the element of
> knowledge as well as being instructed on when
> knowledge can be inferred? The defendant in
> this case requested a <u>Chicone</u> instruction. The
> trial court denied that request; the denial
> was reversible error.

<u>Id</u>. at 172 (footnote omitted). Thereafter, in <u>McMillon v. State</u>,

813 So.2d 56 (Fla. 2002), the Florida Supreme Court extended

<u>Chicone</u> to cases where the defendant was charged with sale of a

controlled substance.

Later, in <u>Garcia v. State</u>, 901 So.2d 788 (Fla. 2005), the

Florida Supreme Court stated:

> When read together, <u>Medlin</u>, <u>Chicone</u>, and
> <u>Scott</u> stand for the proposition that "guilty
> knowledge" is an element of the offense of
> possession and must be proven beyond a
> reasonable doubt. The guilty knowledge
> element includes knowledge of both the
> presence of, and the illicit nature of, the
> substance possessed, and the jury should be
> instructed on both. When requested by the
> defendant, it is error for the trial court to
> fail to instruct the jury on the guilty
> knowledge element regardless of the defense,
> even when the State's case supports the <u>Medlin</u>
> presumption of knowledge. <u>See</u> <u>Scott</u>, 808 So.2d
> at 171.
>
>          . . . .
>
> Thus, when a defendant argues that he or she
> had no knowledge that an illegal substance was
> in his or her possession, that defendant also
> disputes that he or she had knowledge of the
> nature of the illegal substance. When an
> essential element of a crime is in dispute at
> trial, such as the knowledge of the illicit
> nature of the substance in a possession case,

> the failure to instruct the jury on that
> element is fundamental error.

<u>Id</u>. at 793, 794.

Thus, "[t]he failure to give a jury instruction on an element of a crime is fundamental error if the element was disputed at trial." <u>Nash v. State</u>, 951 So.2d 1003, 1005 (Fla. 4th DCA 2007) (citing <u>Garcia</u>, 901 So.2d at 793). "Conversely, '[f]ailing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error and there must be an objection to preserve the issue for appeal.'" <u>Nash</u>, 951 So.2d at 1005 (citing <u>State v. Delva</u>, 575 So.2d 643, 645 (Fla. 1991)).

The First District Court of Appeal has stated:

> Appellant challenges his conviction for sale or delivery of cocaine. He alleges that the trial court committed fundamental error in failing to instruct the jury on the essential knowledge element for sale or delivery of cocaine as required by <u>Chicone v. State</u>, 684 So.2d 736 (Fla. 1996).FN1   The only issue raised during trial was that appellant was not the person who sold the cocaine.
>
> > FN1. Knowledge of the illicit nature of a controlled substance is no longer an element of the offenses of possession, or sale or delivery of a controlled substance for offenses committed after May 13, 2002. Section 893.101, Florida Statutes (2002). Appellant committed his offense prior to the effective date of section 893.101.[6] <u>See</u> <u>Norman v. State</u>, 826 So.2d 440 (Fla. 1st DCA

---

[6] Petitioner Asbell committed the offense on April 24, 2002. Ex. A, Information.

2002) (holding section 893.101 cannot be applied retroactively).

In <u>Davis v. State</u>, 839 So.2d 734 (Fla. 4th DCA 2003), *reh'g denied*, 839 So.2d 734 (Fla. 4th DCA 2003), the Fourth District found no fundamental error in a similar set of facts:

> <u>Chicone</u> requires that, where a defendant requests it, the jury must be instructed that the defendant have knowledge that the substance is illegal. In this case the instruction was not requested, but defendant argues that it was fundamental error not to give it.
>
> Because guilty knowledge was not an issue in this case, in that the only position taken by the defendant was that he was not the person who sold the cocaine to the informant, any error in not giving a guilty knowledge instruction would not rise to the level of fundamental error. <u>State v. Delva</u>, 575 So.2d 643 (Fla. 1991). We therefore affirm.

<u>Id</u>.

As in <u>Davis</u>, defense counsel argued the identification was unreliable; guilty knowledge was not an issue at trial. Thus, any error in not giving the guilty knowledge or <u>Chicone</u> instruction, did not rise to the level of fundamental error.

Affirmed.

<u>Starling v. State</u>, 842 So.2d 992, 992-93 (Fla. 1st DCA 2003), <u>rev</u>.

<u>denied</u>, 939 So.2d 1060 (Fla. 2006).

Here, Petitioner Asbell's defense theory at trial was that he was not the individual who sold the cocaine. Petitioner Asbell did

31

not testify at trial or present any evidence at trial.  Tr. at 109-12.  He did not assert that he had no knowledge of the illicit nature of the substance.

At the charge conference, the parties did not discuss instructing the jury with regard to knowledge of the illicit nature of the offense, and the jury was not so instructed.  Id. at 112-13, 136-45.  After the instructions were read, the judge asked whether there was anything he did not read.  Id. at 145.  Defense counsel responded, "No, sir.  You covered everything."  Id. at 145-46.  The jury instructions read at the trial adequately covered the elements of the crime with which Petitioner was charged.  The trial court did not commit fundamental error for failure to give the Chicone jury instruction.  Thus, this ground has no merit.[7]  See Response at 36-38.

---

[7] As previously noted, Petitioner presented the appellate court with the following claim: ineffective assistance of appellate counsel for failure to raise on direct appeal that the trial court committed fundamental error in not giving a jury instruction pursuant to Chicone.  Ex. L.  The appellate court per curiam denied the petition on the merits and thereafter denied his motion for rehearing.  Asbell, 881 So.2d 1163; Ex. M; Ex. N; Ex. O.

For all of the previously-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 23rd day of July, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

sc 7/22
c:
Johnny Lee Asbell
Ass't Attorney General of Record

33